UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MICHAEL A. ROSEBORO,                          :

                Plaintiff,              :                    10 Civ. 3269 (AJP)

          -against-                 :          **OPINION AND ORDER**

OFFICER GILLESPIE, COUNSELOR WANDA            :
WINGATE & OFFICER WINGATE,
                           :

            Defendants.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

        Pro se plaintiff Michael A. Roseboro brings this action pursuant to Bivens v. Six

Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971),[1/]

---

[1/]    Roseboro asserts his claims against defendants, all federal employees, pursuant to 42 U.S.C.
§ 1983. (See Dkt. No. 5: Am. Compl. at p. 1; Dkt. No. 60: Roseboro Br. at 4, 28.) Section
1983 provides a cause of action against any person:

> [W]ho, under color of any statute, ordinance, regulation, custom, or usage, of any
> State . . . , subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. The Second Circuit "has long construed the phrase 'under color of state
law' as used in . . . civil rights statutes, notably 42 U.S.C. § 1983, to apply only to state
actors, not federal officials." Dotson v. Greisa, 398 F.3d 156, 162 (2d Cir. 2005), cert.
denied, 547 U.S. 1191, 126 S. Ct. 2859 (2006). Thus, Roseboro cannot assert claims under
section 1983 against defendants since they are federal employees. See, e.g., Arias v. United
States, 05 Civ. 10497, 2007 WL 4157152 at *16 (S.D.N.Y. Nov. 15, 2007) (dismissing
§ 1983 claims against officials from the Department of Homeland Security because they are
federal officials). The Court construes all of Roseboro's claims against defendants as Bivens
claims. See, e.g., Taverez v. Reno, 54 F.3d 109, 109-10 (2d Cir. 1995) (approving district
court's recasting of a § 1983 claim brought by pro se inmate against federal officers as
(continued...)

alleging that Correction Officer Aniasha Gillespie, Correction Counselor Wanda Wingate and

Correction Officer Serena Wingate committed numerous retaliatory acts against him for filing prison

grievances against Officer Gillespie and Counselor Wingate.  (Am. Compl. at pp. 8-10, 14-21, 24-

25, 28-33, 41; Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 72-84, 86-90, 129-30.)  Roseboro

also alleges various violations of his due process rights and claims that he was subject to cruel and

unusual punishment.  (Am. Compl. at p. 40; Roseboro Dep. at 90-94, 97-98, 100-01, 103-04.)

Presently before the Court is defendants' motion for summary judgment, in which

defendants argue that:  (1) Roseboro failed to exhaust administrative remedies as required under the

Prison Litigation Reform Act; (2) Roseboro fails to assert a "[p]lausible [c]laim" for retaliation,

violation of his due process rights or cruel and unusual punishment; and (3) defendants are entitled

to qualified immunity.  (Dkt. No. 46: Notice of Motion; Dkt. No. 47: Defs. Br. at 13-24; Dkt. No.

66: Defs. Reply Br. at 1-8.)

The parties have consented to disposition of this case by a Magistrate Judge pursuant

to 28 U.S.C. § 636(c).  (Dkt. No. 20: § 636(c) Consent Form.)

For the reasons set forth below, defendants' summary judgment motion (Dkt. No. 46)

is <u>GRANTED</u>.

---

[1]/      (...continued)
<u>Bivens</u> claim); <u>Sash</u> v. <u>United States</u>, 674 F. Supp. 2d 531, 532 n.1 (S.D.N.Y. 2009) (Peck,
M.J.) (construing § 1983 claims against federal agents as <u>Bivens</u> claims); <u>Bender</u> v. <u>General
Services Administration</u>, 539 F. Supp. 2d 702, 707 n.4 (S.D.N.Y 2008) (Lynch, D.J.)
(construing pro se plaintiff's § 1983 claim against federal security contractors as a <u>Bivens</u>
claim); <u>see also</u> Section II.A below.

## FACTS

Roseboro was an inmate at the Metropolitan Correctional Center ("MCC") from August 12, 2008 to December 7, 2009.  (Dkt. No. 54: Defs. Rule 56.1 Stmt. ¶ 1; Dkt. No. 61: Roseboro Rule 56.1 Stmt. ¶ 1; Dkt. No. 62: Roseboro Aff. at p. 1.)

### Roseboro's Interaction with Correction Officer Aniasha Gillespie

In January - February 2009, Roseboro was housed in and worked as an orderly in MCC's 11-South Unit.  (Dkt. No. 51: Gillespie Aff. ¶ 3; Dkt. No. 54: Defs. Rule 56.1 Stmt. ¶¶ 9, 14; Dkt. No. 61: Roseboro Rule 56.1 Stmt. ¶¶ 9, 14.)  During that time period, Aniasha Gillespie worked in 11-South Unit as a correction officer.  (Gillespie Aff. ¶¶ 1-2; Defs. & Roseboro Rule 56.1 Stmts. ¶ 10.)

According to Roseboro, on February 12, 2009, Officer Gillespie asked Roseboro why he was incarcerated and he told her he was accused of stealing three million dollars.  (Dkt. No. 5: Am. Compl. at pp. 3 (¶ D), 8-9, 31; Roseboro Rule 56.1 Stmt. ¶ 22; Dkt. No. 62: Roseboro Aff. ¶¶ 1, 4, 38.)  Officer Gillespie asked if the money was recovered and offered to get the stashed money, "take some for herself, put some on [Roseboro's] books and . . . hold on to the rest."  (Am. Compl. at pp. 9-10, 31, 38; Roseboro Rule 56.1 Stmt. ¶ 22; Roseboro Aff. ¶¶ 5-6.)[2]

---

[2]    Officer Gillespie denies that she ever spoke to Roseboro about why he was incarcerated or his money.  (Gillespie Aff. ¶¶ 10-11.)

Additionally, according to Roseboro, Officer Gillespie told Roseboro that she read his mail[3/] and asked him "how could [he] tell two women [he] love[d] them." (Am. Compl. at pp. 8, 31; Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 87-88; Roseboro Rule 56.1 Stmt. ¶¶ 20-21; Roseboro Aff. ¶¶ 2-3.)  Two weeks later, a woman Roseboro had sent a "church tract" to informed him that someone had written the name of another woman on the tract. (Am. Compl. at pp. 8-9; Roseboro Dep. at 88; Roseboro Aff. ¶¶ 8-9, 38.)[4/]  Roseboro believed that Officer Gillespie "tampered" with his mail, and he filed numerous grievances because he felt that Officer Gillespie was "unprofessional" and committed "misconduct."  (Am. Compl. at pp. 9-10, 12 (9/23/09 Grievance), 13 (12/3/09 Grievance), 31.)  Roseboro claims that he filed a grievance in "early March" 2009 (Am. Compl. at p. 34; Roseboro Rule 56.1 Stmt. ¶¶ 8, 100; Roseboro Aff. ¶ 30), but Roseboro's first grievance in MCC's records against Officer Gillespie was dated October 20, 2009. (Dkt. No. 53: McFarland Aff. Ex. O: 10/20/09 Grievance; Defs. Rule 56.1 Stmt. ¶ 100.)[5/]

---

[3/]     Officer Gillespie's job responsibilities included reading inmates' letters before mailing. (Gillespie Aff. ¶ 6; Defs. & Roseboro Rule 56.1 Stmts. ¶ 20.)

[4/]     Officer Gillespie denies that she spoke with Roseboro about his mail and denies that she wrote on his mail.  (Gillespie Aff. ¶¶ 8-9.)

[5/]     The parties also disagree as to whether Roseboro administratively exhausted all his grievances as required by the Prison Litigation Reform Act ("PLRA").  (See Dkt. No. 47: Defs. Br. at 13-15; Defs. Rule 56.1 Stmt. ¶¶ 78-116; Dkt. No. 60: Roseboro Br. at 9-15, 27, 35-46, 56-57; Roseboro Rule 56.1 Stmt. ¶¶ 78-116; Dkt. No. 66: Defs. Reply Br. at 1-7.) Since this Court is denying Roseboro's claims on the merits, it need not address whether Roseboro complied with the PLRA. See, e.g., Henderson v. Sommer, 08 Civ. 3440, 09 Civ. 611, 2011 WL 1346818 at *5 n.3 (S.D.N.Y. Apr. 1, 2011) (addressing PLRA: "The Court 'need not specifically decide whether [Plaintiff's claims have] been exhausted because [such] claims fail on the merits.'" (alterations in original)).

**Roseboro's Allegations of Retaliation by Counselor Wanda Wingate**

In late February 2009, Roseboro reported Officer Gillespie's conduct to his counselor, Wanda Wingate. (Dkt. No. 5: Am. Compl. at pp. 14, 31-32; Dkt. No. 48: Counselor Wingate Aff. ¶ 5; Dkt. No. 54: Defs. Rule 56.1 Stmt. ¶¶ 11, 22; Dkt. No. 61: Roseboro Rule 56.1 Stmt. ¶¶ 11, 22; Dkt. No. 62: Roseboro Aff. ¶ 10.) Roseboro alleges that Counselor Wingate told him that Officer Gillespie was her "homegirl," and that Counselor Wingate "would take care of the situation." (Am. Compl. at p. 14; Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 73; Roseboro Rule 56.1 Stmt. ¶ 24; Roseboro Aff. ¶¶ 11, 38.) Roseboro admits that Counselor Wingate never discouraged him from filing a grievance against Officer Gillespie, or anyone else. (Roseboro Dep. at 73, 113-14.)[6/]

Two weeks later, on March 10, 2009, Roseboro went to Counselor Wingate's office to discuss a visitor request that he had sent in a month earlier and that he felt Counselor Wingate was not processing. (Am. Compl. at pp. 14, 32; Counselor Wingate Aff. ¶¶ 13-14; Roseboro Dep. at 78-79; Defs. & Roseboro Rule 56.1 Stmts. ¶¶ 33-34; Roseboro Aff. ¶ 12.) Counselor Wingate informed Roseboro that the request was denied because the visitor, Angelina Russ, had a criminal history. (Counselor Wingate Aff. ¶ 14; Defs. Rule 56.1 Stmt. ¶¶ 31-32, 35; Roseboro Rule 56.1 Stmt. ¶ 32.) According to Counselor Wingate, Roseboro "became irate" and "yelled and punched the wall" of her office. (Counselor Wingate Aff. ¶ 15; Defs. Rule 56.1 Stmt. ¶¶ 35-36.) After Roseboro refused

---

[6/]    Although their shifts overlapped by half an hour and they would sometimes discuss work matters, Officer Gillespie and Counselor Wingate "were not friends and did not see each other outside of work." (Counselor Wingate Aff. ¶¶ 2, 7; Dkt. No. 51: Gillespie Aff. ¶¶ 2, 12-14; Defs. & Roseboro Rule 56.1 Stmts. ¶¶ 10, 12-13.) Counselor Wingate "would not have referred to [Officer Gillespie] as [her] 'homegirl'" and did not do so. (Counselor Wingate Aff. ¶¶ 6-7.)

to leave, Counselor Wingate called for additional staff and Roseboro was taken to the Special Housing Unit ("SHU").  (Counselor Wingate Aff. ¶¶ 16-17; Defs. Rule 56.1 Stmt. ¶¶ 37-38; Roseboro Aff. ¶ 13.)

Counselor Wingate filed an incident report against Roseboro.  (Counselor Wingate Aff. ¶ 18; Dkt. No. 53: McFarland Aff. Ex. C: 3/10/09 Incident Report ¶¶ 1-13; Defs. & Roseboro Rule 56.1 Stmts. ¶ 39.)[7]  Roseboro denies yelling, punching the wall or threatening Counselor Wingate, and claims that she "wrote a false incident [report] about" him.  (Am. Compl. at pp. 15, 32-33; Dkt. No. 60: Roseboro Br. at 26-27, 46-47, 56; Roseboro Rule 56.1 Stmt. ¶¶ 35-37, 39, 43-44; Roseboro Aff. ¶ 13.)  As a result of Counselor Wingate's incident report, Roseboro remained in the SHU "for a couple of days."  (Am. Compl. at pp. 15, 33.)

On March 12, 2009, a Unit Disciplinary Committee ("UDC") comprised of Case Manager Ivy Jenkins and Counselor Jackie Gross-Campbell found Roseboro guilty of the charges in Counselor Wingate's incident report and sanctioned Roseboro to a ninety-day loss of commissary privileges and a six-month loss of visitation privileges.  (Am. Compl. at pp. 15, 33; 3/10/09 Incident Report ¶¶ 18-20; Defs. & Roseboro Rule 56.1 Stmts. ¶ 42; Roseboro Aff. ¶ 15.)  Roseboro filed a grievance challenging the sanction, alleging that, although Counselor Wingate's incident report stated that Roseboro punched the walls of her office, she never told that to the responding officer.  (Am. Compl. at pp. 15, 34; McFarland Aff. Ex. D: Roseboro March Grievance ¶ A; Defs. Rule 56.1 Stmt. ¶ 43.)  On April 16, 2009, MCC Warden Duke Terrell sustained Roseboro's sanction.

---

[7]   Roseboro had no disciplinary issues prior to this incident report.  (McFarland Aff. Ex. S: Roseboro Disciplinary Record.)

(McFarland Aff. Ex. D: 4/16/09 Terrell Letter to Roseboro; Defs. & Roseboro Rule 56.1 Stmts. ¶ 45.)  After Roseboro was released from the SHU, Counselor Wingate told him "that there were no hard feelings between" them.  (Roseboro Dep. at 128-29; Defs. & Roseboro Rule 56.1 Stmts. ¶ 46.)

**Roseboro's Allegations of Retaliation by Officer Serena Wingate**

On June 1, 2009, Officer Serena Wingate, Counselor Wingate's niece, was working at 11-North Unit where Roseboro was housed.  (Dkt. No. 48: Counselor Wingate Aff. ¶ 25; Dkt. No. 49: Officer Wingate Aff. ¶¶ 1-3, 21; Dkt. No. 54: Defs. Rule 56.1 Stmt. ¶¶ 47-49; Dkt. No. 61: Roseboro Rule 56.1 Stmt. ¶¶ 47-49.)  At about 4:00 p.m., Officer Wingate conducted an inmate count at 11-North Unit.  (Dkt. No. 5: Am. Compl. at p. 16; Officer Wingate Aff. ¶ 4; Defs. & Roseboro Rule 56.1 Stmts. ¶ 51; Dkt. No. 62: Roseboro Aff. ¶ 17.)  MCC rules require that "inmates have to stand for the count and have to be standing when the officer approaches his or her cell." (Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 129-30; Defs. & Roseboro Rule 56.1 Stmts. ¶ 52.)  According to Officer Wingate, Roseboro was not standing when she arrived at his cell, but rather just "lifted his bottom up without standing."  (Officer Wingate Aff. ¶¶ 6-8; Defs. Rule 56.1 Stmt. ¶¶ 53-54.)

Roseboro claims that he "was in the process of standing up" when Officer Wingate approached and that she called him a "motherfucker" and said she was going to report his conduct. (Am. Compl. at p. 16, 28; Roseboro Dep. at 80-81, 129-30; Roseboro Rule 56.1 Stmt. ¶¶ 52-53, 79; Roseboro Aff. ¶ 17.)  Roseboro also claims that Officer Wingate denied his requests to speak to a lieutenant.  (Am. Compl. at pp. 16-17; Roseboro Dep. at 81-82; Roseboro Aff. ¶ 20.)

According to Roseboro, Officer Wingate distributed the mail after the inmate count, but withheld a letter to Roseboro from his wife.  (Roseboro Dep. at 82; Roseboro Rule 56.1 Stmt. ¶ 62.)  Officer Wingate only gave the letter to Roseboro after he started complaining.  (Roseboro Rule 56.1 Stmt. ¶ 62.)  After the mail was delivered, Lieutenant Delaney took Roseboro to the SHU for not standing during the inmate count.  (Am. Compl. at p. 17; Defs. Rule 56.1 Stmt. ¶ 59; Roseboro Rule 56.1 Stmt. ¶ 60; Roseboro Aff. ¶ 21.)[8/]  Inside the SHU, Lieutenant Gonzalez interviewed Roseboro and conducted an investigation before validating the charges in Officer Wingate's incident report.  (Defs. & Roseboro Rule 56.1 Stmts. ¶ 66.)

After Roseboro was taken to the SHU, Officer Wingate packed all of Roseboro's property, filled out an inventory slip and gave the property and the slip to an "internal officer" to take to the SHU property officer.  (Officer Wingate Aff. ¶ 18; Dkt. No. 53: McFarland Aff. Ex. F: Inmate Personal Property Record; Defs. Rule 56.1 Stmt. ¶ 63.)  When Roseboro's property was delivered to him in the SHU, his food, clothes, pictures and one of his legal binders were missing. (Defs. Rule 56.1 Stmt. ¶ 64;  Roseboro Rule 56.1 Stmt. ¶¶ 63-64.)[9/]  Roseboro believes that Officer

---

[8/]     Officer Wingate claims that Roseboro was taken to the SHU before the mail was delivered and denies that she withheld any mail from Roseboro.  (Officer Wingate Aff. ¶¶ 12, 17; Defs. Rule 56.1 Stmt. ¶¶ 60-62.)

[9/]     Upon leaving the SHU on June 22, 2009, Roseboro signed the inventory slip, but made a handwritten note that he was missing food and some clothing and only received one legal binder and his shower shoes.  (Inmate Personal Property Record & Handwritten Note; Roseboro Rule 56.1 Stmt. ¶ 64.)  Roseboro claims that the original grievance he filed in early March 2009 against Officer Gillespie was part of the missing legal binder.  (Roseboro Rule 56.1 Stmt. ¶ 64.)

Wingate threw out his property (Roseboro Dep. at 83-84, 86), a charge she denies (Officer Wingate Aff. ¶ 20).

On June 4, 2009, a UDC comprised of Case Manager Ivy Jenkins and Counselor Wingate conducted a hearing on the charges in Officer Wingate's incident report. (Am. Compl. at pp. 17-18, 28-29; Counselor Wingate Aff. ¶¶ 20, 24; McFarland Aff. Ex. G: 6/1/09 Incident Report ¶ 21; Defs. & Roseboro Rule 56.1 Stmts. ¶ 67; Roseboro Aff. ¶¶ 22, 25.)[10/] Roseboro alleges that, during the hearing, Counselor Wingate laughed in his face and told Case Manager Jenkins that Roseboro was guilty and that Jenkins, who chaired the UDC, should give him the "'max.'" (Am. Compl. at pp. 18, 29; Roseboro Rule 56.1 Stmt. ¶¶ 68, 72-73; Roseboro Aff. ¶¶ 25a, 26.)[11/] The

---

[10/]  Generally, an inmate's counselor and case manager are assigned to the UDC, but other members of the inmate's unit team may be assigned if someone is unavailable. (Counselor Wingate Aff. ¶¶ 22-23; Defs. Rule 56.1 Stmt. ¶ 69.) Although Case Manager Jenkins and Counselor Wingate were no longer directly assigned to Roseboro (Am. Compl. at pp. 17-18, 29; Roseboro Rule 56.1 Stmt. ¶¶ 67, 70; Roseboro Aff. ¶¶ 23, 24b, 25b), they were part of his unit team and assigned to the UDC due to staff unavailability (Counselor Wingate Aff. ¶ 20; Defs. Rule 56.1 Stmt. ¶¶ 67-71).

Roseboro wrote a grievance to Warden Terrell, complaining that he was "treated unfairly" by the UDC. (Am. Compl. at p. 19; McFarland Aff. Ex. N: 8/17/09 Terrell Letter to Roseboro.) On August 17, 2009, Warden Terrell responded, noting that there was sufficient evidence to sustain the charges and that the "UDC was conducted within BOP [Bureau of Prisons] guidelines." (8/17/09 Terrell Letter to Roseboro.) Nevertheless, Warden Terrell reinstated Roseboro's commissary and phone privileges after finding that "a member of the UDC was related to the writer of the incident report." (8/17/09 Terrell Letter to Roseboro.)

[11/]  Counselor Wingate states that she did not speak to or laugh at Roseboro and that Case Manager Jenkins "read the offenses charged against Inmate Roseboro, allowed him an opportunity to respond and then informed him of the sanctions against him." (Counselor Wingate Aff. ¶¶ 27-28; Defs. Rule 56.1 Stmt. ¶¶ 72-73.)

UDC sustained Officer Wingate's charges and Roseboro was sanctioned with a ninety-day loss of his commissary, phone and visit privileges.  (Am. Compl. at p. 29; 6/1/09 Incident Report ¶¶ 18-20; Defs. & Roseboro Rule 56.1 Stmts. ¶ 72; Roseboro Aff. ¶ 26.)

During the hearing, Roseboro "became insolent" and cursed at Case Manager Jenkins and Counselor Wingate.  (Counselor Wingate Aff. ¶ 29; McFarland Aff. Ex. H: 6/4/09 2:25 p.m. Incident Report ¶¶ 11, 19 & Ex. I: 6/4/09 Counselor Wingate Memo; Defs. Rule 56.1 Stmt. ¶ 74.)  As a result, Case Manager Jenkins wrote an incident report and Roseboro was further sanctioned by another UDC.  (Counselor Wingate Aff. ¶ 29; 6/4/09 2:25 p.m. Incident Report ¶¶ 1-13, 20; Defs. & Roseboro Rule 56.1 Stmts. ¶ 75.)  Additionally, after the hearing, Roseboro flooded the SHU by repeatedly flushing his toilet and received additional sanctions.  (McFarland Aff. Ex. J: 6/4/09 3:00 p.m. Incident Report ¶ 11; Defs. & Roseboro Rule 56.1 Stmts. ¶ 76.)[12/]

Roseboro also claims that on December 4, 2009 he saw Officer Wingate in the hallway and she gave him "a dirty look and turned her back."  (Am. Compl. at pp. 20, 24.)  About thirty minutes later, a lieutenant called Roseboro to his office and told him that Officer Wingate had called and alleged that Roseboro was "bothering her."  (Am. Compl. at pp. 20-21, 24.)  After Roseboro denied the allegation and claimed that Officer Wingate was "harassing" him, the lieutenant told Roseboro "not to worry about it."  (Am. Compl. at pp. 21, 24-25.)  Although Roseboro was never sanctioned for this incident, Roseboro filed a grievance against Officer Wingate, which was

---

[12/]     Roseboro's disciplinary record also includes sanctions for an October 6, 2009 fight with another inmate.  (Roseboro Dep. at 65; McFarland Aff. Ex. S: Roseboro Disciplinary Record; Defs. & Roseboro Rule 56.1 Stmts. ¶ 117.)

never addressed.  (Am. Compl. at pp. 21, 23 (Roseboro December Grievance), 24-25, 26 (Roseboro

1/26/10 Letter to Warden).)

**Roseboro's Claims in This Lawsuit**

Broadly reading his allegations, Roseboro claims that defendants retaliated against

him for filing grievances against Officer Gillespie and Counselor Wingate (Dkt. No. 5: Am. Compl.

at p. 41; Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 77, 86-87, 89-90; Dkt. No. 62: Roseboro

Aff. ¶ 24a) by committing the following retaliatory acts:  (1) Officer Gillespie wrote Roseboro's

wife's name on a church tract he sent to another woman (Am. Compl. at pp. 8-9, 31; Roseboro Dep.

at 88); (2) Officer Gillespie spoke with Counselor Wingate and Officer Wingate about her issues

with Roseboro, which led to their retaliatory acts (Roseboro Dep. at 89); (3) Counselor Wingate

failed to process Roseboro's visitor requests (Roseboro Dep. at 74, 78-79); (4) Counselor Wingate

denied Roseboro's visitor request relating to Angelina Russ (Roseboro Dep. at 74-75, 77-79);

(5) Counselor Wingate wrote a false incident report alleging that Roseboro threatened her and was

screaming and punching the walls of her office on March 10, 2009 (Am. Compl. at pp. 14-15, 32-33;

Roseboro Dep. at 75-76); (6) Officer Wingate wrote an incident report for Roseboro failing to stand

during the June 1, 2009 inmate count even though he was "in the process of standing" (Am. Compl.

at pp. 16, 28; Roseboro Dep. at 80-81, 129); (7) Officer Wingate cursed at Roseboro during the

inmate count (Am. Compl. at pp. 16, 28; Roseboro Dep. at 81, 129-30); (8) Officer Wingate denied

Roseboro's requests to see a lieutenant after the inmate count (Am. Compl. at pp. 16-17; Roseboro

Dep. at 81-82); (9) Officer Wingate withheld a letter from Roseboro's wife after the inmate count

(Am. Compl. at p. 40; Roseboro Dep. at 82); (10) Officer Wingate threw out Roseboro's property after he was placed in the SHU (Roseboro Dep. at 83-84, 86); and (11) Officer Wingate "harassed" Roseboro on December 4, 2009 by telling a lieutenant that he was "bothering her" (Am. Compl. at pp. 21, 24-25).

Roseboro also claims that his due process rights were violated when (a) he lost his privileges as a result of failing to stand during the June 1, 2009 inmate court (Roseboro Dep. at 91); (b) he was sent to a low-security prison instead of a camp (Roseboro Dep. at 92); (c) all his grievances were not addressed (Roseboro Dep. at 93-94); (d) he was prevented from calling witnesses and having a staff member present during his June 2009 disciplinary hearing (Roseboro Dep. at 98); and (e) his property was thrown out after he was sent to the SHU (Roseboro Dep. at 98).

Additionally, Roseboro claims that he was subject to cruel and unusual punishment when his privileges were taken away, when he shared a cell with "cold-blooded murderers" in the SHU, and when he was sent to a low-security prison instead of a camp.  (Am. Compl. at p. 40; Roseboro Dep. at 100-101, 103.)

Roseboro claims that defendants caused him "emotional and mental distress" and seeks $250,000 in damages.  (Am. Compl. at 5 (¶ V), 41.)

## ANALYSIS

### I.    SUMMARY JUDGMENT STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also, e.g.,

Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949

F.2d 576, 580 (2d Cir. 1991).

   The burden of showing that no genuine factual dispute exists rests on the party

seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct.

1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v.

Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may

discharge this burden by demonstrating to the Court that there is an absence of evidence to support

the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g.,

Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

   To defeat a summary judgment motion, the non-moving party must do "more than

simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus.

Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  The non-moving party

normally must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); see,

e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356;

Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time

has come . . . 'to put up or shut up.'" (citations omitted)), cert. denied, 540 U.S. 811, 124 S. Ct. 53

(2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[13/] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented. See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact. See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987). To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510. While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or

---

[13/]   See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g.,

Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

"The Court recognizes that it must 'must extend extra consideration' to pro se

plaintiffs" and that "pro se parties are to be given special latitude on summary judgment motions."

Salahuddin v. Coughlin, 999 F. Supp. 526, 535 (S.D.N.Y. 1998) (Rakoff, D.J. & Peck, M.J.)

(citations & internal quotations omitted); see, e.g., McPherson v. Coombe, 174 F.3d 276, 280 (2d

Cir. 1999) (a pro se party's pleadings should be read liberally and interpreted "'to raise the strongest

arguments that they suggest'").[14]   "Nevertheless, proceeding pro se does not otherwise relieve a

litigant from the usual requirements of summary judgment, and a pro se party's 'bald assertion,'

unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  Cole v.

Artuz, 93 Civ. 5981, 1999 WL 983876 at *3 (S.D.N.Y. Oct. 28, 1999) (citing cases).[15]

---

[14]  See also, e.g., Ferran v. Town of Nassau, 471 F.3d 363, 369 (2d Cir. 2006); Fuller v. Armstrong, 204 F. App'x 987, 988 (2d Cir. 2006), cert. denied, 552 U.S. 906, 128 S. Ct. 209 (2007); Gildor v. U.S. Postal Serv., 179 F. App'x 756, 758 (2d Cir. 2006); Porter v. Coughlin, 421 F.3d 141, 144 n.2 (2d Cir. 2005); Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003); Johnson v. Buffalo Police Dep't, 46 F. App'x 11, 12 (2d Cir. 2002), cert. denied, 539 U.S. 959, 123 S. Ct. 2645 (2003).

[15]  See also, e.g., United States v. Acomb, No. 99-6308, 216 F.3d 1073 (table), 2000 WL 899482 at *1 (2d Cir. June 29, 2000); James v. Phillips, 05 Civ. 1539, 2008 WL 1700125 at *3 (S.D.N.Y. Apr. 9, 2008); Thompson v. Tracy, 00 Civ. 8360, 2008 WL 190449 at *5 (S.D.N.Y. Jan. 17, 2008); Bunting v. Nagy, 452 F. Supp. 2d 447, 454 (S.D.N.Y. 2006); Rodriguez v. McClenning, 399 F. Supp. 2d 228, 234 & n.52 (S.D.N.Y. 2005); Pack v. Artuz, 348 F. Supp. 2d 63, 78 (S.D.N.Y. 2004); Rector v. Sylvania, 285 F. Supp. 2d 349, 353 (S.D.N.Y. 2003); Walker v. Vaughan, 216 F. Supp. 2d 290, 296-97 (S.D.N.Y. 2002); Hussein v. The Waldorf-Astoria, 134 F. Supp. 2d 591, 596 (S.D.N.Y. 2001), aff'd, 31 F. App'x 740 (2d Cir. 2002).

**II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ROSEBORO'S RETALIATION CLAIMS**

**A.     Federal Claims Brought Pursuant To Bivens v. Six Unknown Agents**

Under <u>Bivens</u> and its progeny, federal courts can hear suits for money damages against federal government officials accused of violating constitutional rights.  <u>Bivens</u> v. <u>Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388, 396-97, 91 S. Ct. 1999, 2004-05 (1971); <u>see also</u>, <u>e.g.</u>, <u>Corr. Servs. Corp.</u> v. <u>Malesko</u>, 534 U.S. 61, 66, 122 S. Ct. 515, 519 (2001) ("In <u>Bivens</u> . . . we recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."); <u>Schweiker</u> v. <u>Chilicky</u>, 487 U.S. 412, 421, 108 S. Ct. 2460, 2466 (1988) ("In [<u>Bivens</u>], this Court held that the victim of a Fourth Amendment violation by federal officers acting under color of their authority may bring suit for money damages against the officers in federal court."); <u>Carlson</u> v. <u>Green</u>, 446 U.S. 14, 18-19, 100 S. Ct. 1468, 1471 (1980) ("<u>Bivens</u> established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.").  As Justice Harlan wrote in his oft-cited concurrence in <u>Bivens</u>:  "[F]ederal courts do have the power to award damages for violation of 'constitutionally protected interests' and I agree with the Court that a traditional judicial remedy such as damages is appropriate to the vindication of the personal interests protected by the Fourth

Amendment." Bivens, 403 U.S. at 399, 91 S. Ct. at 2006 (Harlan, J. concurring); see also Erwin

Chemerinsky, Federal Jurisdiction § 9.1.2 (5th ed. 2007).[16/]

"'Bivens actions are not significantly dissimilar to claims brought under [42 U.S.C.]

§§ 1981 and 1983 in terms of the interests being protected, the relief which may be granted and the

defenses which may be asserted.'" Chin v. Bowen, 833 F.2d 21, 23-24 (2d Cir. 1987). "Because the

two actions share the same 'practicalities of litigation,' federal courts have typically incorporated

---

[16/] The Supreme Court subsequently expanded the Bivens doctrine to provide money damages for infringements of other constitutional rights by federal officers. See, e.g., Wilkie v. Robbins, 551 U.S. 537, 549-50, 127 S. Ct. 2588, 2597-98 (2007); Farmer v. Brennan, 511 U.S. 825, 828-34, 114 S. Ct. 1970, 1974-78 (1994); Schweiker v. Chilicky, 487 U.S. at 421, 108 S. Ct. at 2466-67 (summarizing causes of action recognized under Bivens); Davis v Passman, 442 U.S. 228, 243-45, 99 S. Ct. 2264, 2276-77 (1979); see also, e.g., Erwin Chemerinsky, Federal Jurisdiction § 9.1.2 at 611 ("[I]n subsequent decisions the [Supreme] Court recognized the existence of causes of action for infringements of the Fifth, Eighth and First Amendments. Lower federal courts have recognized Bivens suits for violations of the First, Fourth, Fifth, Eighth, Ninth and Fourteenth Amendments." (fns. citing cases omitted)); Arar v. Ashcroft, 585 F.3d 559, 571-72 (2d Cir. 2009) (The Supreme Court has limited the availability of Bivens claims to Fourth Amendment violations, employment discrimination claims in violation of the Due Process Clause, and Eighth Amendment violations by prison officials.), cert. denied, 130 S. Ct. 3409 (2010); Dotson v. Griesa, 398 F.3d 156, 165-66 (2d Cir. 2005) (recognizing the availability of Bivens claims in the context of Fourth, Fifth, and Eighth Amendment violations), cert. denied, 547 U.S. 1191, 126 S. Ct. 2859 (2006); Schweitzer v. Dep't of Veterans Affairs, 23 F. App'x 57, 59 (2d Cir. 2001) ("'Bivens actions' for damages against federal officers [are] permitted for violations of the Due Process Clause of the Fifth Amendment."), cert. denied, 535 U.S. 955, 122 S. Ct. 1359 (2002); Tellier v. Fields, 280 F.3d 69, 76 (2d Cir. 2000) (Bivens claim based on violations of procedural due process rights under the Due Process Clause of the Fifth Amendment); Noguera v. Hasty, 99 Civ. 8786, 2000 WL 1011563 at *8-9 (S.D.N.Y. July 21, 2000) (Peck, M.J.), report & rec. adopted in part, 2001 WL 243535 (S.D.N.Y. Mar. 12, 2001).

§ 1983 law into Bivens actions."  Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (citation

omitted).[17]

## B.     First Amendment Retaliation Claim

        To prove a First Amendment retaliation claim, "a prisoner must show '(1) that the

speech or conduct at issue was protected, (2) that the defendant took adverse action against the

plaintiff, and (3) that there was a causal connection between the protected speech and the adverse

action.'"  Espinal v. Goord, 558 F.3d 119, 128 (2d Cir. 2009).[18]

        For the second prong, adverse action, the plaintiff must show that the defendant's

"retaliatory conduct . . . would deter a similarly situated individual of ordinary firmness from

exercising his or her constitutional rights . . . . Otherwise, the retaliatory act is simply de minimis,

and therefore outside the ambit of constitutional protection."  Dawes v. Walker, 239 F.3d 489, 492-

---

[17]    See, e.g., Butz v. Economou, 438 U.S. 478, 504, 98 S. Ct. 2894, 2909 (1978) (no "distinction for purposes of immunity law" between Bivens and § 1983 claims); Polanco v. U.S. Drug Enforcement Admin., 158 F.3d 647, 653 (2d Cir.1998) (same statute of limitation applies to Bivens and § 1983 claims); Chin v. Bowen, 833 F.2d at 24 ("[T]here is a 'general trend in the appellate courts to incorpote § 1983 law into Bivens suits.'"); Ellis v. Blum, 643 F.2d 68, 83-84 (2d Cir. 1981) (same rule of damages applies to Bivens and § 1983 claims); Garcia v. Watts, 08 Civ. 7778, 2009 WL 2777085 at *12 n.14 (S.D.N.Y. Sept. 1, 2009) ("'Bivens claims are treated as analogous to claims under 42 U.S.C. § 1983 and incorporate the same law.'"); DeMartino v. Zenk, No. 04-CV-3880, 2009 WL 2611308 at *8 n.5 (E.D.N.Y. Aug. 25, 2009); Alcantara v. City of N.Y., 646 F. Supp. 2d 449,456-57 (S.D.N.Y. 2009); Connors v. Heywright, 02 Civ. 9988, 2003 WL 21087886 at *2 n.1 (May 12, 2003) (Chin, D.J.) ("In general, case law under § 1983 applies to Bivens cases.").

[18]    Accord, e.g., Kotler v. Donelli, 382 F. App'x 56, 57 (2d Cir. 2010); Henderson v. Sommer, 08 Civ. 3440, 09 Civ. 611, 2011 WL 1346818 at *5 (S.D.N.Y. Apr. 1, 2011); Bilal v. N.Y.S. Dep't of Corr., 09 Civ. 8433, 2010 WL 2506988 at *14 (S.D.N.Y. June 21, 2010) (Peck, M.J.); Garcia v. Watts, 08 Civ. 7778, 2009 WL 2777085 at *9 (S.D.N.Y. Sept. 1, 2009).

93 (2d Cir. 2001) (citations omitted), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002).[19]

For the third prong, causal connection between the protected speech and the adverse action, a court may consider a number of factors, including "any statements made by the defendant concerning his motivation" and "the temporal proximity between the protected activity and the defendant's adverse action." Williams v. Muller, 98 Civ. 5204, 2001 WL 936297 at *3 (S.D.N.Y. Aug. 17, 2001); see, e.g., Espinal v. Goord, 558 F.3d at 129; Gill v. Jones, 95 Civ. 9031, 2001 WL 1346012 at *6 (S.D.N.Y. Nov. 1, 2001); Walker v. Keyser, 2001 WL 1160588 at *6; Rivera v. Goord, 119 F. Supp. 2d at 339.  In the context of retaliatory false misbehavior reports, a court may also consider the plaintiff's prior good disciplinary record and whether he was vindicated at the subsequent disciplinary hearing.  See, e.g., Jones v. Marshall, 08 Civ. 0562, 2010 WL 234990 at *4 (S.D.N.Y. Jan. 19, 2010); Brown v. Brown, No. 08-CV-0209, 2010 WL 1186569 at *6 (N.D.N.Y. Jan. 19, 2010), report & rec. adopted, 2010 WL 1186566 (N.D.N.Y. Mar. 24, 2010); Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009); Baskerville v. Blot, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002).

---

[19]    Accord, e.g., Zherka v. Amicone, 634 F.3d 642, 644-45 (2d Cir. 2011); Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999); Thaddeus-X v. Blatter, 175 F.3d 378, 396-98 (6th Cir. 1999) (to be actionable, retaliation against a prisoner must be likely to "chill a person of ordinary firmness from continuing to engage" in activity protected by the First Amendment); Henderson v. Sommer, 2011 WL 1346818 at *5; Bilal v. N.Y.S. Dep't of Corr., 2010 WL 2506988 at *14; Mateo v. Fischer, 682 F. Supp. 2d 423, 433 (S.D.N.Y. 2010); Walker v. Keyser, 98 Civ. 5217, 2001 WL 1160588 at *6 (S.D.N.Y. Oct. 2, 2001), aff'd, 131 F. App'x 775 (2d Cir. 2005); Wagnoon v. Gatson, 00 Civ. 3722, 99 Civ. 5872, 2001 WL 709276 at *6 (S.D.N.Y. June 25, 2001); Rivera v. Goord, 119 F. Supp. 2d 327, 340 (S.D.N.Y. 2000).

If the plaintiff satisfies his burden,

> the defendants must show by a preponderance of the evidence that they would have disciplined the plaintiff "even in the absence of the protected conduct."  Thus, if taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone.

Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citations omitted).[20]

Prisoners' claims of retaliation, of course, must be examined with skepticism and particular care because they are "'prone to abuse' since prisoners can claim retaliation for every decision they dislike."  Graham v. Henderson, 89 F.3d at 79 (quoting Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)); accord, e.g., Gill v. Pidlypchak, 389 F.3d 379, 385 (2d Cir. 2004); Bennett v. Goord, 343 F.3d at 137; Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003); Dawes v. Walker, 239 F.3d at 491; Jackson v. Johnson, 15 F. Supp. 2d at 364 (& cases cited therein).

---

[20]   See, e.g., Gill v. Tuttle, 93 F. App'x 301, 303 (2d Cir. 2004); Bennett v. Goord, 343 F.3d 133, 137 (2d. Cir. 2003); Ebron v. CTO Huria, No. 99-0087, 205 F.3d 1322 (table), 2000 WL 241576 at *1 (2d Cir. Feb. 1, 2000); Davidson v. Chestnut, 193 F.3d at 148-49; Duamutef v. Hollins, No. 97-2692, 159 F.3d 1346 (table), 1998 WL 537838 at *1 (2d Cir. July 7, 1998);  Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.), cert. denied, 525 U.S. 907, 119 S. Ct. 246 (1998); Davidson v. Kelly, No. 96-2066, 131 F.3d 130 (table), 1997 WL 738109 at *3 (2d Cir. Nov. 24, 1997); Lowrance v. Achtyl, 20 F.3d 529, 535 (2d Cir. 1994); Sher v.  Coughlin, 739 F.2d 77, 82 (2d Cir. 1984); see also, e.g., Hare v. Hayden, 09 Civ. 3135, 2011 WL 1453789 at *4 (S.D.N.Y. Apr. 14, 2011); Walker v. Keyser, 2001 WL 1160588 at *6; Williams v. Muller, 98 Civ. 5204, 2001 WL 936297 at *3 (S.D.N.Y. Aug. 17, 2001); Jackson v. Johnson, 15 F. Supp. 2d 341, 363-64 (S.D.N.Y. 1998) (Kaplan, D.J. & Peck, M.J.); Campbell v. Kuhlmann, 91 Civ. 6766, 1998 WL 249196 at *4 (S.D.N.Y. May 15, 1998).

### C.      Application to Roseboro's Retaliation Allegations

Roseboro satisfies his burden with respect to the first prong of the First Amendment retaliation analysis: that the speech or conduct at issue was protected.  Roseboro alleges that defendants retaliated against him for filing prison grievances.  (See page 11 above.)  "It is well settled that the filing of a prison grievance is a protected activity."  Mateo v. Fischer, 682 F. Supp.2d 423, 433 (S.D.N.Y. 2010).[21/]

### 1.      Officer Aniasha Gillespie

Roseboro alleges that within two weeks after Officer Gillespie admonished him on February 12, 2009 for telling two women he loved them, Officer Gillespie wrote his wife's name on a church tract he sent to another woman (first retaliation claim).  (See page 4 above.)  Roseboro claims that Officer Gillespie wrote his wife's name on the church tract in retaliation for him filing a grievance against her.  (Dkt. No. 60: Roseboro Br. at 53.)

Roseboro's position is untenable because his first grievance against Officer Gillespie was in fact for writing his wife's name on the church tract.  (See page 4 above.)  While the parties

---

[21/]      See, e.g., Kotler v. Donelli, 382 F. App'x 56, 57 (2d Cir. 2010) ("There is no dispute that [plaintiff's] activities on the grievance committee were protected."); Gill v. Pidlypchak, 389 F.3d at 384 ("[Plaintiff] has sufficiently alleged . . . participation in protected activity: the use of the prison grievance system."); Dawes v. Walker, 239 F.3d 489, 492 (2d Cir. 2001) (filing of internal prison complaint against a correction officer is protected by the First Amendment), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002); Ayers v. Roberts, No. 05-CV-889, 2008 WL 2079921 at *6 (W.D.N.Y. May 15, 2008) ("The filing of formal prisoner grievances is among the conduct protected by the First Amendment and thus actionable under § 1983."); Smith v. Woods, No. 03-CV-480, 2006 WL 1133247 at *10 (N.D.N.Y. Apr. 24, 2006) (extending First Amendment protection to prisoner plaintiff's oral complaints to correction officers), aff'd, 219 F. App'x 110 (2d Cir. 2007), cert. denied, 522 U.S. 1248, 128 S. Ct. 1485 (2008).

dispute when the first grievance was filed (see page 4 above), this Court will assume, for summary judgment purposes, that the first grievance was filed in early March 2009 as Roseboro contends (see page 4 above).   Consequently, this claim fails because Officer Gillespie's conduct cannot be retaliatory since it predated the protected speech.   See, e.g., Verri v. Nanna, 972 F. Supp. 773, 788 (S.D.N.Y. 1997) ("'[C]learly' a plaintiff cannot base a claim of retaliation upon complained-of acts that predated the speech." (quoting Bernheim v. Litt, 79 F.3d 318, 325 (2d Cir.1996)); see also, e.g., Szarzynski v. Roche Labs. Inc., No. 07-CV-6008, 2010 WL 811445 at *14 (W.D.N.Y. Mar. 1, 2010) ("[T]he alleged [adverse] action predates any protected activity.   Thus, plaintiff fails to make out a prima facie case of retaliation because he cannot show a causal connection."); Negussey v. Syracuse Univ., No. 95-CV-1827, 1997 WL 141679 at *12 (N.D.N.Y. Mar. 24, 1997) ("[A] plaintiff may not predicate a retaliation claim on acts that predate the protected activity.").

Roseboro also claims that Officer Gillespie retaliated by talking to Counselor Wingate and Officer Wingate about his grievance, which led to their retaliatory acts (second retaliation claim).   (See page 11 above.)   This claim fails because Roseboro has not provided any evidence that such a discussion ever took place.   Rather, Roseboro assumes that Officer Gillespie and Counselor Wingate discussed these matters because he saw them "talking all the time" and they admitted that they discussed work matters.   (Dkt. No. 60: Roseboro Br. at 20, 27-28, 49; see also page 5 n.6 above.)[22/]   Additionally, despite admitting that he did not know whether Officer Gillespie

---

[22/]      Counselor Wingate does not recall knowing that Roseboro filed a grievance against Officer Gillespie or discussing the matter with her.   (Dkt. No. 48: Counselor Wingate Aff. ¶¶ 8-9; Dkt. No. 54: Defs. Rule 56.1 Stmt. ¶¶ 26-27.)

and Officer Wingate knew each other (Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 90),

Roseboro now claims that he once saw them talking (Roseboro Br. at  52-53).  These speculative

and conclusory allegations, however, are not enough to defeat summary judgment.  See, e.g., Ayers

v. Stewart, No. 96-2013, 101 F.3d 687 (table), 1996 WL 346049 at *1 (2d Cir. June 25, 1996)

(Plaintiff's "allegation that a meeting had transpired among the defendants, during which they

allegedly agreed to confine [plaintiff], is conclusory and is totally unsupported by the record.  As

such, it cannot defeat summary judgment."); Crenshaw v. Herbert, 445 F. Supp. 2d 301, 305

(W.D.N.Y. 2006) (defendants entitled to summary judgment where "plaintiff offers nothing more

than speculation that the moving defendants did what they did because he had filed a grievance");

Alicea v. Howell, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) ("The only evidence relied upon by

plaintiff are the facts that [a DOCS employee] and [defendant] spoke about plaintiff's grievance

against [defendant], and that [the DOCS employee] subsequently found plaintiff guilty of the drug

charge against him.  To infer that [defendant] prejudiced [the DOCS employee] against plaintiff,

however, or that there was a causal connection between [defendant's] conversation with [the DOCS

employee] and his finding of plaintiff's guilt, is based on sheer speculation."); Nunez v. Goord, 172

F. Supp. 2d 417, 431 (S.D.N.Y. 2001) (defendants entitled to summary judgment on plaintiff's claim

that they "conspired together to retaliate against" him where plaintiff failed to present evidence that

the defendants actually agreed to retaliate and his allegations were "too 'unsupported, speculative

and conclusory' to survive summary jugment."); Arce v. Walker, 58 F. Supp. 2d 39, 46

(W.D.N.Y.1999) ("There is no evidence to support [plaintiff's] bald conclusion that the actions at

Attica were retaliatory.  [Plaintiff] does not allege that anyone made any statements to him or that he overhead any comments or observed any acts that suggested an improper motive.").

Accordingly, Officer Gillespie is granted summary judgment dismissing Roseboro's retaliation claims against her.

### ii.    **Counselor Wanda Wingate**

Roseboro claims that Counselor Wingate retaliated against him for his grievance against Officer Gillespie by failing to process his visitor requests (third retaliation claim), denying Angelina Russ' request to visit him (fourth retaliation claim) and filing a false incident report on March 10, 2009 (fifth retaliation claim).  (See pages 5-6, 11 above.)

These claims fail to satisfy the third prong:  causal connection between the protected speech and the alleged adverse actions.  In addressing this requirement, a court may consider: (1) any statements made by the defendant concerning his motivation for his conduct; (2) the temporal proximity between the protected activity and the alleged adverse action; (3) the plaintiff's prior good disciplinary record; and (4) whether the plaintiff was vindicated at the subsequent disciplinary hearing.  (See cases cited on page 19 above.)

Roseboro does not present any evidence that Counselor Wingate's actions were motivated by retaliation.  Indeed, Roseboro does not present any evidence that Counselor Wingate even knew that Roseboro filed a grievance against Officer Gillespie.  While Roseboro may have spoken to Counselor Wingate about his issues with Officer Gillespie (see page 5 above), he never submitted a grievance to Counselor Wingate and merely speculates that "someone brought it to her

attention."  (Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 113-14; Dkt. No. 60: Roseboro Br. at 19-20).  This speculation is not enough to defeat summary judgment.  (See cases cited on pages 23-24 above.)

Moreover, even assuming that Counselor Wingate knew about Roseboro's grievance against Officer Gillespie, he has failed to provide any basis to believe that Counselor Wingate retaliated for a grievance that she was not personally named in.  See, e.g., Hare v. Hayden, 09 Civ. 3135, 2011 WL 1453789 at *4 (S.D.N.Y. Apr. 14, 2011) ("As a general matter, it is difficult to establish one defendant's retaliation for complaints against another defendant."); Bryant v. Goord, 99 Civ. 9442, 2002 WL 553556 at *2 (S.D.N.Y. Apr. 12, 2002) ("The grievances that Plaintiff filed prior to the disciplinary proceedings at issue here did not involve any of these Defendants, therefore, there is no basis to assume that these Defendants instituted disciplinary proceedings against Plaintiff to retaliate for his filing grievances against other corrections officers."); Williams v. Goord, 111 F. Supp. 2d 280, 290 (S.D.N.Y. 2000) ("[P]laintiff has not sufficiently alleged that the conduct of [the defendants] was motivated by plaintiff's activities.  Plaintiff fails to plead specific facts or to assert any causal connection between his filing of grievances against [one defendant] and his alleged denial of exercise by" the other defendants.); cf. Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009) (affirming dismissal of plaintiff's retaliation claim against correction officers where, inter alia, the alleged basis for retaliation was a complaint about a prior assault by another inmate that did not name any of the defendants or any other correction officers).[23]/

_____

[23]/     In Espinal v. Goord, however, the Second Circuit found summary judgment inappropriate
(continued...)

Even crediting Roseboro's claim that Counselor Wingate told him Officer Gillespie was her "homegirl" and that Counselor Wingate "would take care of the situation" (see page 5 above), these statements do not demonstrate a retaliatory intent.  If anything, these statements indicate that Counselor Wingate was willing to talk to Officer Gillespie on Roseboro's behalf.  Moreover, these statements must be taken in context of Roseboro's admission that Counselor Wingate never discouraged him from filing a grievance against Officer Gillespie and that she told him "that there were no hard feelings between" them.  (See pages 5, 7 above).

Direct evidence is not required where "circumstantial evidence of a retaliatory motive is sufficiently compelling."  Bennett v. Goord, 343 F.3d 133, 138-39 (2d Cir. 2003).  The only circumstantial evidence of retaliation here is Roseboro's claim that the adverse actions first started after he filed a grievance against Officer Gillespie.  (See Roseboro Br. at 20, 51-52.)  This Court assumes for summary judgment purposes that the first grievance was filed in early March 2009 as Roseboro contends (see page 4 above) and Counselor Wingate's allegedly retaliatory March 10, 2009 false incident report began immediately thereafter.

---

[23]/     (...continued)

after finding a "legitimate inference" that a defendant correction officer participated in a retaliatory beating of an inmate because of the inmate's prior lawsuit against other correction officers, even though the defendant was not named in the suit.  Espinal v. Goord, 558 F.3d 119, 129-30 (2d Cir. 2009).  Espinal is distinguishable because, unlike the current case, the officers involved in the beating told the plaintiff that "'this is what happens to [i]nmates when they submit law suits against us.'"  Espinal v. Goord, 558 F.3d at 122.  Without such a statement evincing retaliatory intent, there is no "legitimate inference" here that Counselor Wingate retaliated for a grievance she was not named in.

To be sure, a "plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action."  Espinal v. Goord, 558 at 129.  Such circumstantial evidence of retaliation, however, without more, is insufficient to survive summary judgment.  See, e.g., Ayers v. Stewart, 1996 WL 346049 at *1 (Plaintiff's "reliance on circumstantial evidence of retaliation-namely, the proximity of the disciplinary action to his complaint where no misbehavior reports were previously filed against him-does not suffice to defeat summary judgment."); Brown v. Graham, No. 07-CV-1353, 2010 WL 6428251 at *18-19 (N.D.N.Y. Mar. 30, 2010) ("[T]emporal proximity is the only fact that might give rise to a determination by a reasonable factfinder that the misbehavior report was issued in retaliation for plaintiff's grievance activity.  However, that link is insufficient when considered in light of the present record.  There is no evidence that [defendant] was aware of plaintiff's grievance activity . . . ."), report & rec. adopted, 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011); Williams v. Goord, 111 F. Supp. 2d at 290 ("Although the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment."); Gill v. DeFrank, 98 Civ. 7851, 2000 WL 270854 at *16 (S.D.N.Y. Mar. 9, 2000) (Peck, M.J.) ("While the temporal proximity of the filing of the grievance and the issuance of the misbehavior report is circumstantial evidence of retaliation, such evidence, without more, is insufficient to survive summary judgment."), report & rec. adopted as modified, 2000 WL 897152 (S.D.N.Y. July 6, 2000); cf. Blue v. Koren, 72 F.3d 1075, 1085 (2d Cir. 1995) ("a temporal

sequence . . .  may fuel . . . suspicions, [but] it does not satisfy the heightened evidentiary standard").[24/]

Even when the temporal proximity evidence is combined with Roseboro's prior good prison record (see page 6 n.7 above), that is insufficient to defeat summary judgment.  See, e.g., Ayers v. Stewart, 1996 WL 346049 at *1 (defendants entitled to summary judgment where the only circumstantial evidence of retaliation is plaintiff's prior good prison record and the temporal proximity between his grievance and the alleged adverse action).

Viewing Roseboro's retaliation claims with the appropriate skepticism (see cases cited on page 20 above), this Court finds that Roseboro has failed to provide sufficient evidence to establish a causal connection between his grievance against Officer Gillespie and Counselor Wingate's alleged adverse action.

Even assuming that Roseboro could establish a causal connection between his protected speech and Counselor Wingate's actions, his third and fourth retaliation claims still fail.

---

[24/]    Compare, e.g., Bennett v. Goord, 343 F.3d at 138 (summary judgment precluded where plaintiff's allegations were supported by the temporal proximity of settling of his lawsuit and the alleged retaliation and where "all relevant adverse actions by DOCS officials were subsequently found to have been unjustified."); Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995) (circumstantial evidence of clean prison record and temporal proximity of filing of lawsuits and issuance of allegedly false misbehavior report, along with direct proof of retaliation, sufficient to withstand summary judgment); Jones v. Coughlin, 45 F.3d 677, 680 (2d Cir. 1995) (plaintiff's testimony that retaliatory threats had been made, together with sequence of events, made summary judgment inappropriate); Smith v. City of N.Y., 03 Civ. 7576, 2005 WL 1026551 at *4 (S.D.N.Y. May 3, 2005) ("However, when this alleged statement [i.e., "'I don't like you, I'm pretty sure you know why'"] is combined with circumstantial evidence regarding the timing of the incident, plaintiff has established genuine issues of material fact regarding the reason for the destruction of his property.").

Specifically, Roseboro claims that Counselor Wingate retaliated by failing to process his visitor requests for approximately one month (third retaliation claim).  (See pages 5, 11 above.)  As Roseboro presents no evidence demonstrating that this delay was unusually long, Roseboro's third retaliation claim fails because there is no basis for this Court to find that Counselor Wingate's alleged delay constituted an adverse action.  See, e.g., Daniels v. Walker, No. 93-CV-0570, 1995 WL 760707 at *4 (N.D.N.Y. Nov. 25, 1995) (denying plaintiff's retaliation claim that defendants delayed in implementing his approved visit because "the record is barren of any evidence supporting plaintiff's bald assertion that his request for an [Family Reunion Program] visit took an unusually or suspiciously long time to be accommodated.").

Roseboro also claims that Counselor Wingate retaliated by denying Angelina Russ' request to visit him (fourth retaliation claim).  (See pages 5, 11 above.)  In his deposition, however, Roseboro acknowledged that Russ had a criminal record, but baldly claimed that retaliation was "one of the reasons" Counselor Wingate denied Russ' visit request. (Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 77-79.)  It is well established that a defendant can defeat a retaliation claim by showing, by a preponderance of the evidence, that the action would have been taken "'even in the absence of the protected conduct.'"  Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); see also cases cited on page 20 n.20 above.  In making this determination, the Second Circuit has "established a 'presumption that a prison official's acts to maintain order are done for a proper purpose.'"  Hynes v. Squillace, 143 F.3d 653, 657 (2d Cir.), cert. denied, 525 U.S. 907, 119 S. Ct. 246 (1998).  "'[T]he conclusion that the state action would have been taken in the absence of improper motives is readily drawn in the context of prison administration where we have been

cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage.'" Hynes v. Squillace, 143 F.3d at 657; Graham v. Henderson, 89 F.3d at 79.  A "district court should recognize that the presumption of proper purpose accorded the acts of prison officials is particularly strong when officials act pursuant to a duty imposed by a prison regulation which is observed in practice and is essential to prison discipline and order." Rivera v. Senkowski, 62 F.3d 80, 86 (2d Cir. 1995)

Counselor Wingate states that the visitor request was "legitimately denied" because Russ had a criminal background.  (Dkt. No. 48: Counselor Wingate Aff. ¶ 12; Dkt. No. 54: Defs. Rule 56.1 Stmt. ¶¶ 31-32).[25/]  While it would have been helpful for Counselor Wingate's affidavit to address MCC's policies regarding visitors with criminal backgrounds, it is obvious that regulating visits from individuals with criminal backgrounds is essential to prison discipline and order. Roseboro's fourth retaliation claim fails for the additional reason that Counselor Wingate has provided a non-retaliatory basis for denying Russ' visit request.

Accordingly, Counselor Wingate is granted summary judgment on Roseboro's retaliation claims.

---

[25/]   Counselor Wingate's affidavit does not state the extent of Russ' criminal background (see Counselor Wingate Aff. ¶ 12), but Roseboro claims that Counselor Wingate told him that Russ had been charged with murder (Roseboro Dep. at 77-78; Dkt. No. 60: Roseboro Br. at 24).  Roseboro acknowledges that Russ has a criminal history, but does not know whether it includes a murder charge.  (Roseboro Dep. at 77-78; Dkt. No. 61: Roseboro Rule 56.1 Stmt. ¶ 32.)

### iii.    **Officer Serena Wingate**

Roseboro claims that Officer Wingate retaliated against him for filing grievances against Officer Gillespie and Counselor Wingate.  (Dkt. No. 5: Am. Compl. at p. 41; Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 86-87, 89-90; Dkt. No. 62: Roseboro Aff. ¶ 24a.)  As with his claims against Counselor Wingate, see pages 24-28 above, Roseboro has failed to provide evidence establishing a causal connection between his grievances and Officer Wingate's conduct.  This is particularly true since the only evidence connecting Officer Gillespie and Officer Wingate is Roseboro's claim that he saw them talking.  This speculative evidence, however, is not enough to support a retaliation claim.  See Alicea v. Howell, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) ("The only evidence relied upon by plaintiff are the facts that [a DOCS employee] and [defendant] spoke about plaintiff's grievance against [defendant], and that [the DOCS employee] subsequently found plaintiff guilty of the drug charge against him.  To infer that [defendant] prejudiced [the DOCS employee] against plaintiff, however, or that there was a causal connection between [defendant's] conversation with [the DOCS employee] and his finding of plaintiff's guilt, is based on sheer speculation."); see also cases cited on pages 23-24 above.  Moreover, there is no reason to believe that Officer Wingate retaliated for grievances that did not concern her.  (See cases cited on page 25 above.)

Even if a jury could reasonably infer that Officer Wingate retaliated against Roseboro because he filed grievances against her aunt Counselor Wingate, Roseboro's claims still fail.  Specifically, Roseboro claims that Officer Wingate wrote an incident report for failing to stand during the June 1, 2009 inmate count even though Roseboro was "in the process of standing" (sixth

retaliation claim).  (See pages 7, 11 above.)  A defendant can defeat a retaliation claim by showing that, even absent the retaliatory motivation, the plaintiff would have received the same punishment. (See page 20 above.)  A "defendant can meet this burden by demonstrating that there is no dispute that the plaintiff 'committed the most serious, if not all, of the prohibited conduct charged in the misbehavior report.'" Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002); accord, e.g., Bowens v. Pollock, No. 06-CV-0457, 2010 WL 5589350 at *10 (W.D.N.Y. Oct. 12, 2010), report & rec. adopted, 2011 WL 146836 (W.D.N.Y. Jan. 18, 2011).  Roseboro acknowledges that MCC rules require that "inmates have to stand for the count and have to be standing when the officer approaches his or her cell."  (See page 7 above.)  Since Roseboro admits that he was not standing when Officer Wingate approached his cell, there is no dispute that Roseboro committed the misconduct charged and that Officer Wingate thus had a non-retaliatory justification to issue the incident report.  See, e.g., Cole v. Fischer, No. 10-2548, 2011 WL 1086902 at *2 (2d Cir. Mar. 25, 2011) ("The record fails to support an inference of the requisite causal connection between [plaintiff's] grievances and the misbehavior report filed against him.  Rather, the evidence reveals that, at the disciplinary hearing triggered by the report at issue, [plaintiff] admitted the alleged misconduct. The adverse action, therefore, appears independently justified."); Chavis v. Goord, 333 F. App'x 641, 644 (2d Cir.) ("[T]he defendants were entitled to summary judgment because there were non-retaliatory reasons for their conduct, where Appellant did not dispute that he had disobeyed orders, which was, in part, the basis for the misbehavior reports."), cert. denied, 130 S. Ct. 760 (2009).

Roseboro also alleges that Officer Wingate cursed at him during the June 1, 2009 inmate count (seventh retaliation claim).  (See pages 7, 11 above.)  This claim fails because an inmate "has no right to redress simply because [an officer] made a hostile or derogatory comment about him."  Davidson v. Bartholome, 460 F. Supp. 2d 436, 446 (S.D.N.Y. 2006) (denying retaliation claim where a sergeant "became hostile and began cursing" at the plaintiff and threatened to issue a "'false'" misbehavior report); see also, e.g., Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003) (rejecting inmate's claim that a defendant "retaliated against him by speaking to him in a 'hostile' manner" because "[i]nsulting or disrespectful comments directed at an inmate generally do not rise to [the] level" of an adverse action); Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called [plaintiff] names also did not allege any appreciable injury and was properly dismissed."); Tafari v. McCarthy, 714 F. Supp. 2d 317, 364 (N.D.N.Y. 2010) ("'Verbal harassment itself does not rise to the level of a constitutional violation.  Verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations.'"); Lunney v. Brureton, 04 Civ. 2438, 2005 WL 121720 at *11  (S.D.N.Y. Jan. 21, 2005) (Plaintiff's "general allegations of threats and harassment are insufficient to state a claim because comments that are merely 'insulting' or 'disrespectful' do not give rise to a constitutional violation."), report & rec. adopted, 2005 WL 433285 (S.D.N.Y. Feb. 23, 2005).

Roseboro next claims that Officer Wingate denied his requests to speak to a lieutenant after he failed to stand during the inmate court (eighth retaliation claim).  (See pages 7, 11 above.) Roseboro acknowledges, however, that Officer Wingate called Lieutenant Delaney about an hour later and that Lieutenant Delaney took him to the SHU.  (See page 8 above.)  Moreover,

Lieutenant Gonzalez spoke with Roseboro in the SHU before validating Officer Wingate's charges. (See page 8 above.)  Roseboro has failed to present any evidence that a one hour delay in speaking to a lieutenant would deter a prisoner of ordinary firmness from filing a grievance.  This Court finds that Officer Wingate's conduct did not constitute an adverse action.

Roseboro further alleges that Officer Wingate temporarily withheld a letter from Roseboro's wife after the June 1, 2009 inmate count (ninth retaliation claim).  (See pages 8, 12 above.)  Delaying delivery of an inmate's mail for a short time does not rise to the level of adverse action.  See, e.g., Tafari v. McCarthy, 714 F. Supp. 2d at 347 ("Courts in this circuit have held that claims of mail tampering do not constitute adverse action."); Islam v. Goord, 05 Civ. 7502, 2006 WL 2819651 at *7 (S.D.N.Y. Sept. 29, 2006) ("Plaintiff also suggests that [a defendant's] alleged tampering with his family and legal mail was retaliatory.  However, this is not the type of conduct that would deter an ordinary individual from exercising his constitutional rights.  Plaintiff does not allege that he suffered any injury as a result of the alleged tampering, and therefore these isolated instances of mail tampering are not 'adverse actions' supporting a cause of action for First Amendment retaliation."); Battice v. Phillip, No. CV-04-669, 2006 WL 2190565 at *6 (E.D.N.Y. Aug. 2, 2006) (Defendant's "failure to deliver [plaintiff's] mail on one occasion does not constitute the type of conduct that would deter an ordinary individual from exercising his constitutional rights.  [Plaintiff] does not allege, much less present any evidence to show, that he suffered any injury as a result of the minor delay in receiving one piece of mail.  Even if intentional, this isolated incident is 'simply de minimis and therefore outside the ambit of constitutional protection.'").

Roseboro also claims that Officer Wingate destroyed his property after he was sent to the SHU for failing to stand for the inmate count (tenth retaliation claim).  (See pages 8-9, 12 above.) The retaliatory destruction of an inmate's personal property can constitute an adverse action. See, e.g., Smith v. City of N.Y., 03 Civ. 7576, 2005 WL 1026551 at *4 (S.D.N.Y. May 3, 2005) ("Such retaliatory destruction of a prisoner's personal property has previously been found substantial enough to qualify as an adverse action.").[26/]  In order to  prevail on this claim, Roseboro must show that Officer Wingate "'intentionally' or 'deliberately' lost or destroyed his property."  Key v. Toussaint, 660 F. Supp. 2d 518, 526 (S.D.N.Y. 2009); see, e.g., Gill v. Frawley, No. 02-CV-1380, 2006 WL 1742738 at *5 & nn.25-26 (N.D.N.Y. June 22, 2006).  Roseboro also must show that Officer Wingate was "'personally involved'" in losing or destroying his property.  Key v. Toussaint, 660 F. Supp. 2d at 526.

Roseboro fails to provide any evidence that Officer Wingate intentionally lost or destroyed his property.  While Officer Wingate acknowledges that she packed up Roseboro's belongings, she was not the exclusive custodian of his property as she gave it to an "internal officer" to deliver it to the SHU property officer.  (See page 8 above.)  Roseboro's property might have been simply lost or misplaced somewhere in this process and not intentionally destroyed.  Moreover, Roseboro acknowledges that he received one of his legal binders and his shower slippers.  (See page 8 n.9 above.)  "The return of a portion of his property . . . suggests that there was no intentional act

---

[26/]   See also, e.g., Soto v. Iacavino, 01 Civ. 5850, 2003 WL 21281762 at *2 (S.D.N.Y. June 4, 2003) ("Plaintiff has alleged that specific corrections officers deliberately destroyed his property in order to retaliate against him for the filing of grievances. If this is true, it states a viable claim.").

on any particular person's part to lose or destroy his property." Key v. Toussaint, 660 F. Supp. 2d at 526.  Furthermore, Officer Wingate noted in the property record that Roseboro's property included books, letters, legal materials, notepads, socks and slippers.  (Dkt. No. 53: McFarland Aff. Ex. F: Inmate Personal Property Record.)  Common sense dictates that if Officer Wingate intended to destroy some of Roseboro's property, she would not have listed those items in the property record.

Finally, Roseboro claims that Officer Wingate "harassed" him on December 4, 2009 by telling a lieutenant that he was "bothering her"  (eleventh retaliation claim).  (See pages 10-11, 12 above.)  Officer Wingate's actions, however, do not rise to the level of adverse action, particularly since Roseboro was never sanctioned for the alleged incident.  (See pages 10-11 above.) See, e.g., Rosales v. Kikendall, 677 F. Supp. 2d 643, 648 (W.D.N.Y. 2010) ("[V]erbal harassment, or even threats, are generally held not to rise to the level of adverse action that will support a First Amendment retaliation claim."); Alexander v. Deming, No. 03-CV-0147, 2009 WL 1044561 at *5 (W.D.N.Y. Apr. 16, 2009) ("Courts within the Second Circuit have held that threats of disciplinary action and verbal harassment without injury are insufficient to state a constitutional violation."); Ramirez v. Holmes, 921 F. Supp. 204, 210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim . . . .").

Accordingly, defendants' summary judgment motion is GRANTED as to all of Roseboro's retaliation claims.

## III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ROSEBORO'S DUE PROCESS CLAIMS

Roseboro alleges that his due process rights were violated when he was prevented from calling witnesses and having a staff member present during his June 4, 2009 disciplinary hearing.  (See page 12 above.)  Roseboro further claims that his due process rights were violated when the UDC sanctioned him with a 90-day loss of his commissary, phone and visit privileges for failing to stand during the June 1, 2009 inmate court; this Court interprets his due process claim as alleging that Counselor Wingate, a member of the UDC, was not impartial since the incident report was written by her niece Officer Wingate.  (See pages 7, 9 above; see generally Dkt. No. 5: Am. Compl. at pp. 19, 29-30 (alleging a "conflict of interest" in the June 4, 2009 UDC)).

### A.   Roseboro's SHU Due Process Claim is Barred by Sandin v. Conner and Its Progeny

Roseboro's due process claims are meritless.  In Sandin v. Conner, 515 U.S. 472, 115 S. Ct. 2293 (1995), the Supreme Court held:

> [W]e believe that the search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established and applied in Wolff and Meachum. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

515 U.S. at 483-84, 115 S. Ct. at 2300 (fns. & citations omitted).[27]

---

[27]      In Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 2978-80 (1974), the Supreme
(continued...)

In <u>Sandin</u>, the prisoner was charged with a disciplinary infraction for physical interference with a correction officer, for using abusive or obscene language, and for harassing employees. <u>Id.</u> at 475-76, 115 S. Ct. at 2295-96. The disciplinary committee refused the prisoner's request to present witnesses, found him guilty of the alleged misconduct, and sentenced him to thirty days disciplinary segregation in the prison's Special Holding Unit ("SHU"). <u>Id.</u> The Supreme Court found that the inmate was not entitled to the procedural protections set forth in <u>Wolff</u> v. <u>McDonnell</u>. <u>Sandin</u> v. <u>Conner</u>, 515 U.S. at 487, 115 S. Ct. at 2302. The Supreme Court stated:

> We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation. Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. Indeed, the conditions at Halawa [prison] involve significant amounts of "lockdown time" even for inmates in the general population. Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.

---

[27]/   (...continued)
Court set forth the minimum procedural due process requirements for prison disciplinary hearings. To meet these requirements, an inmate must receive: (1) "advance written notice of the claimed violation"; (2) "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken"; and (3) the opportunity "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Cross-examination and the right to counsel are not required. <u>Id.</u> at 566-70, 94 S. Ct. at 2980-81. The Supreme Court also suggested (but did not order) that if the inmate is illiterate or the issue complex, he be given assistance from another inmate or a staff member. <u>Id.</u> at 570, 94 S. Ct. at 2982. Due process also requires an "impartial" hearing officer. <u>Id.</u> at 570-71, 94 S. Ct. at 2982.

Id. at 486, 115 S. Ct. at 2301 (fns.omitted).

The Second Circuit has "interpreted the Supreme Court's decision in Sandin to mean that 'a prisoner's restricted confinement within a prison does not give rise to a liberty interest, warranting procedural due process protection, unless the conditions and duration of the prisoner's confinement "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."'" Borcsok v. Early, 299 F. App'x 76, 78 (2d Cir. 2008) (quoting Sealey v. Giltner, 197 F.3d 578, 583 (2d Cir.1999)).[28/] "'[N]ormal' SHU conditions, if imposed for a period of up to 101 days, generally do not constitute 'atypical' conditions of confinement."[29/] Bunting v. Nagy, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006) (quoting Sealey v. Giltner, 197 F.3d at 589, & citing Palmer v. Richards, 364 F.3d at 65); see also, e.g., Ortiz v. McBride, 380 F.3d at 654 ("[W]ith respect to 'normal' SHU confinement, we have held that a 101-day confinement does not meet the Sandin standard of atypicality."); Borcsok v. Early, 299 F. App'x at 78  ("Even if we include the eleven days that [plaintiff] spent in the SHU before the disciplinary hearing with the ninety days he

---

[28/]  See also Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) ("A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life,' 'and we read Sandin to require that we look to actual punishment in making this determination.'  Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" (citations omitted)).

[29/]  "[O]rdinarily, SHU prisoners are kept in solitary confinement for twenty-three hours a day, provided one hour of exercise in the prison yard per day, and permitted two showers per week." Ortiz v. McBride, 380 F.3d 649, 655 (2d Cir. 2004), cert. denied, 543 U.S. 1187, 125 S. Ct. 1398 (2005).

received as part of his penalty, the duration of his confinement was neither atypical nor significant.").

Even where plaintiff is pro se, "[o]n a motion for summary judgment by defendants, it is the plaintiff's burden to make an initial showing of an atypical and significant hardship." Bonet v. Khahaifa, 512 F. Supp. 2d 141, 142-43 (W.D.N.Y. 2007); see also Borcsok v. Early, 299 F. App'x at 78 ("Because [plaintiff] does not complain of the conditions of his confinement, any protected liberty interest he possessed would be based upon the duration of his confinement.); Williams v. Calidonna, No. 06-CV-178, 2008 WL 4693160 at *6 (N.D.N.Y. Oct. 21, 2008) ("There is no allegation nor evidence on the record that the conditions inside SHU during Plaintiff's 89 day confinement were atypical or otherwise significant. Therefore, Plaintiff has failed to identify the existence of a liberty interest that could give him a cause of action under the Due Process Clause of the Fourteenth Amendment." (citations omitted)).

Roseboro never identified in his amended complaint, his deposition testimony, his summary judgment opposition brief or his affidavit any conditions of his SHU confinement that were "atypical" or "significant." (See generally Dkt. No. 5: Am. Compl.; Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep.; Dkt. No. 60: Roseboro Br.; Dkt. No. 62: Roseboro Aff.)[30]  Accordingly,

---

[30]  To the extent Roseboro claims that he shared a cell in the SHU with "cold-blooded murderers" (see page 12 above), he has not shown that his cell placement "impose[d] atypical and significant hardship . . . in relation to the ordinary incidents of prison life" (see cases cited on pages 37, 39 above), particularly since he does not allege that he was threatened, attacked, injured or suffered any mental or physical pain by sharing his cell with these individuals.

since Roseboro only received twenty one days in SHU,[31/] his due process claim should be <u>DENIED</u> pursuant to <u>Sandin</u> and its progeny.

**B. Roseboro's June 4, 2009 Hearing Claim is Further Barred Because He Admitted His Guilt of the Charged Infraction, and Any Hearing Error Was Harmless**

Even if Roseboro could get past the <u>Sandin</u> bar, his due process claims regarding calling witnesses and staff member assistance still fail. "Because '[p]rison disciplinary proceedings are not part of a criminal prosecution, . . . the full panoply of rights due a defendant in such proceedings does not apply.'" <u>Williams</u> v. <u>Menifee</u>, 331 F. App'x 59, 60 (2d Cir. 2009) (quoting <u>Wolff</u> v. <u>McDonnell</u>, 418 U.S. 539, 556, 94 S. Ct. 2963, 2975 (1974)); <u>accord</u>, <u>e.g.</u>, <u>Sira</u> v. <u>Morton</u>, 380 F.3d 57, 69 (2d Cir. 2004). Nevertheless, where an inmate is charged with a violation in a disciplinary hearing, due process requires that he be given the opportunity "to call witnesses and present documentary evidence." <u>See</u>, <u>e.g.</u>, <u>Superintendent</u> v. <u>Hill</u>, 472 U.S. 445, 454-56, 105 S. Ct. 2768, 2773-74 (1985); <u>Wolff</u> v. <u>McDonnell</u>, 418 U.S. 539, 566, 94 S. Ct. 2963, 2979 (1974); <u>Williams</u> v. <u>Menifee</u>, 331 F. App'x at 60; <u>Sira</u> v. <u>Morton</u>, 380 F.3d at 69; <u>Johnson</u> v. <u>Mueller</u>, 9 F. App'x 60, 62-63 (2d Cir. 2001); <u>Friedl</u> v. <u>City of N.Y.</u>, 210 F.3d 79, 85 (2d Cir. 2000); <u>Kalwasinski</u> v. <u>Morse</u>, 201 F.3d 103, 108 (2d Cir. 1999); <u>McCann</u> v. <u>Coughlin</u>, 698 F.2d 112, 121-22 (2d Cir. 1983); <u>Espinal</u> v. <u>Goord</u>, 180 F. Supp. 2d 532, 537-38 (S.D.N.Y. 2002); <u>Simon</u> v. <u>Selsky</u>, 99 Civ. 5747, 2002 WL 1205737 at *4 (S.D.N.Y. Mar. 12, 2002).

---

[31/]    Roseboro was sent to the SHU on June 1, 2009, and remained there until June 22, 2009. (<u>See</u> page 8 & n.9 above.) It should be noted that Roseboro's twenty-one day SHU confinement was imposed not only for failing to stand at the inmate count, but also for flooding the SHU (<u>see</u> page 10 above), a charge Roseboro admits, and the punishment was determined by a different UDC that did not include Counselor Wingate.

In addition, in certain circumstances – such as when an inmate is in SHU or keeplock, as Roseboro was (see page 8 above) – an inmate facing a disciplinary hearing at which a protected liberty interest is at stake must be assisted in presenting a defense by a prison staff member or fellow inmate. See, e.g., Wolff v. McDonnell, 418 U.S. at 570, 94 S. Ct. at 2982; Ayers v. Ryan, 152 F.3d 77, 80-81 (2d Cir. 1998); Silva v. Casey, 992 F.2d 20, 22 (2d Cir. 1993); Eng v. Coughlin, 858 F.2d 889, 897-98 (2d Cir. 1988).

While Roseboro asserts that he was prevented from calling witnesses and having a staff member present at the hearing, he fails to assert that these defendants were involved in these decisions. (See Roseboro Dep. at 98.) As such, his due process claims against these defendants fail for lack of personal involvement. See, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Thomas v. Ashcroft, 470 F.3d 491, 496 (2d Cir. 2006) ("[I]n Bivens actions, a plaintiff must allege that the individual defendant was personally involved in the constitutional violation."); Cohen v. Holder, No. 11-CV-0003, 2011 WL 809773 at *2 (E.D.N.Y. Mar. 1, 2011) ("A Bivens action lies against a defendant only when the plaintiff can show the defendant's personal involvement in the constitutional violation.").

Moreover, Roseboro has admitted that he "was sitting on the bed" and not yet standing when Officer Wingate approached during the inmate count. (See Dkt. No. 53: McFarland Aff. Ex. G: 6/1/09 Incident Report ¶ 17; see also page 7 above.) Roseboro acknowledged that MCC rules require that "inmates have to stand for the count and have to be standing when the officer

approaches his or her cell."  (See page 7 above.)   Given that Roseboro admitted violating MCC

rules, which was the basis for the disciplinary charges addressed at the June 4, 2009 hearing,

Roseboro cannot show that the outcome of the hearing would have been different had he called

witnesses or had a staff member assist him.  See, e.g., Pilgrim v. Luther, 571 F.3d 201, 206 (2d Cir.

2009) (applying harmless error analysis to plaintiff's due process claim that he was denied staff

assistance at his prison disciplinary hearing); Grossman v. Bruce, 447 F.3d 801, 805 (10th Cir. 2006)

(A "prisoner cannot maintain a due process claim for failure to permit witness testimony if he fails

to show that the testimony 'would have affected the outcome of his case.'"); Clark v. Dannheim, 590

F. Supp. 2d 426, 429 (W.D.N.Y. 2008) ("To establish a procedural due process claim in connection

with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged

procedural errors, in the sense that the errors affected the outcome of the hearing.").

Furthermore, Roseboro fails to assert who the proposed witnesses were or what their

relevant testimony might have been, and thus has not provided sufficient evidence to allow a jury

to determine that defendants violated his due process.  See, e.g., O'Diah v. Mawhir, No. 08-CV-322,

2010 WL 6230937 at *13 (N.D.N.Y. Dec. 14, 2010) (dismissing plaintiff's due process claims

because plaintiff's allegation were "wholly conclusory" and he "fail[ed] to allege facts from which

a reasonable fact-finder could conclude that he failed to receive adequate advanced notice, an

opportunity to be heard, a fair hearing officer, or any of the other aspects of fairness in the

proceedings to which he was due."), report & rec. adopted, 2011 WL 933846 (N.D.N.Y. Mar. 16,

2011); Swift v. Tweddell, 582 F. Supp. 2d 437, 443 (W.D.N.Y. 2008) (granting defendants summary

judgment on plaintiff's due process claim because "plaintiff has not identified in this lawsuit any

individuals whom he sought to call, nor has he provided any basis for knowing what their testimony

was likely to have been.").

To the extent Roseboro intended to call as a witness his cell mate during the June 1,

2009 inmate count, that testimony actually supported Officer Wingate's charges since his cell mate

testified that:

> It was count time and I was getting up but I'm on crutches so I was a little
> slow getting up.  When the officer came by our cell he (Roseboro) was sitting down
> with his legal papers in his lap.  The way he was sitting the officer couldn't see him.
> The officer told him to stand up, and what he did was lean forward.  The officer
> repeated her order and he stated "what what."  But I didn't hear the officer call him
> a mother fucker.

(Dkt. No. 53: McFarland Aff. Ex. L: Zadiriyev 6/5/09 Aff. ¶ 8.)  Roseboro's due process rights were

not violated because this evidence would have been adverse to him.  See, e.g., Williams v. Menifee,

331 F. App'x at 61 ("While his request to call Gould and Rubinkowski as witnesses was denied, this

did not give rise to a procedural due process violation, since, as they were adverse witnesses, their

testimony was not relevant and had already been fully summarized in the SIS report.").[32/]

## C.   Roseboro Had No Due Process Right to Investigation of His Grievance

Roseboro next claims that his due process rights were violated when his grievances

were not addressed.  (See page 12 above.)  This claim is meritless because "prisoners do not have

---

[32/]   See also, e.g., Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999) (A "hearing officer
does not violate due process by excluding irrelevant or unnecessary testimony."); Rodriguez
v. Selsky, No. 07-CV-0432, 2011 WL 1086001 at *10 (N.D.N.Y. Jan. 25, 2011) ("An
inmate's request to have specific witnesses called to testify may be refused if the hearing
officer reasonably finds that such witnesses' testimony would be duplicative, non-probative,
or would interfere with correctional goals."), report & rec. adopted, 2011 WL 830639
(N.D.N.Y. Mar. 3, 2011).

a due process right to a thorough investigation of grievances." Tafari v. McCarthy, 714 F. Supp. 2d 317, 347 (N.D.N.Y. 2010); see also, e.g., Jordan v. Fischer, No. 08-cv-1294, --- F. Supp. 2d ----, 2011 WL 673781 at *18 (N.D.N.Y. Feb. 17, 2011) ("[T]he failure to properly investigate an inmate's complaint does not rise to the level of a separate constitutional violation.  Inmates do not enjoy a constitutional right to an investigation of any kind by government officials."); Crenshaw v. Hartman, 681 F. Supp. 2d 412, 416 (W.D.N.Y. 2010) ("'[T]he law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly.'"); Thomas v. Picio, 04 Civ. 3174, 2008 WL 820740 at *5 n.5 (S.D.N.Y. Mar. 26, 2008) ("To the extent that Plaintiff alleged a violation of her due process rights based on the thoroughness of Defendant['s] investigation, 'the manner in which grievance investigations are conducted do[es] not create a protected liberty interest.'"); Torres v. Mazzuca, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("The corrections officers' failure to properly address [plaintiff's] grievances by conducting a thorough investigation to his satisfaction does not create a cause of action for denial of due process because [plaintiff] was not deprived of a protected liberty interest.").

**D.    Roseboro's Property and Prison Transfer Claims Fail for Failure to Show Defendants' Involvement**

Roseboro further claims that Officer Wingate violated his due process rights when she threw out his property after he was sent to the SHU.  (See page 12 above.)  Roseboro has not provided sufficient evidence that his property was intentionally destroyed rather than simply lost, or that Officer Wingate destroyed his property.  (See pages 35-36 above.)  As such, his Bivens due process claim fails.  See, e.g., Hallock v. Bonner, 343 F. App'x 633, 635 (2d Cir. 2009) ("It is also

a prerequisite for a due process violation, and hence for a <u>Bivens</u> action of this kind, that the defendants damage plaintiffs' property with intentional conduct."); <u>Polanco</u> v. <u>U.S. Drug Enforcement Admin.</u>, 158 F.3d 647, 650 (2d Cir. 1998) ("<u>Bivens</u> provides a remedy only for intentional deprivations of property without due process of law."); <u>Nwaokocha</u> v. <u>Sadowski</u>, 369 F. Supp. 2d 362, 370 (E.D.N.Y. 2005) ("[N]egligently misplacing an inmate's property does not establish a denial of due process.").

Roseboro also alleges that his due process rights were violated when he was sent to a low-security prison instead of a camp.  (<u>See</u> page 12 above.)  As Roseboro has not alleged that these defendants had any part in that decision, his claim fails.  (<u>See</u> cases cited on page 42 above.)  Moreover, Roseboro's claim also fails because "[i]t is well established that the transfer of a prisoner from one institution to another does not invoke the protection of the Due Process Clause." <u>Meriwether</u> v. <u>Coughlin</u>, 879 F.2d 1037, 1047 (2d Cir. 1989); <u>accord</u>, <u>e.g.</u>, <u>Taylor</u> v. <u>Levesque</u>, 246 F. App'x 772, 774 (2d Cir. 2007); <u>Prins</u> v. <u>Coughlin</u>, 76 F.3d 504, 507 (2d Cir. 1996).

Accordingly, defendants are granted summary judgment dismissing Roseboro's due process claims.

## IV.  DEFENDANTS' SUMMARY JUDGMENT MOTION SHOULD BE GRANTED AS TO ROSEBORO'S CRUEL AND UNUSUAL PUNISHMENT CLAIMS

Roseboro claims that defendants subjected him to cruel and unusual punishment when he was sent to the SHU and his privileges were taken away for failing to stand during the June 1, 2009 inmate count, when he shared a cell in the SHU with "cold-blooded murderers" and when

he was sent to a low-security prison instead of a camp.  (See page 12 above.)  Roseboro's cruel and

unusual punishment claims are meritless.

The Eighth Amendment protects prisoners from "cruel and unusual punishment" in

the form of "unnecessary and wanton infliction of pain" at the hands of prison officials and conduct

that offends "evolving standards of decency."  E.g., Hudson v. McMillan, 503 U.S. 1, 5, 8, 112 S.

Ct. 995, 998, 1000 (1992); Wilson v. Seiter, 501 U.S. 294, 297, 308, 111 S. Ct. 2321, 2323, 2329

(1991); Estelle v. Gamble, 429 U.S. 97, 102, 104-05, 97 S. Ct. 285, 290, 291 (1976); Gregg v.

Georgia, 428 U.S. 153, 173, 96 S. Ct. 2909, 2925 (1976).[33]

---

[33]    Since Roseboro was only a pre-trial detainee at MCC (Dkt. No. 60: Roseboro Br. at 4), his
cruel and unusual punishment claims arise under the Fifth Amendment's Due Process Clause
and not the Eighth Amendment.  See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 106 (2d Cir.
2000) (Plaintiff "was in pre-trial detention at the time of the alleged incidents of which she
complains.  Because as a pre-trial detainee she was not being 'punished,' the 'cruel and
unusual punishment' proscription of the Eighth Amendment to the Constitution does not
apply.  The district court correctly concluded that [plaintiff's] claims arise under the Due
Process Clause of the Fifth Amendment instead."); Adams v. Beaudouin, No. 09-CV-2136,
2011 WL 240714 at *5 (E.D.N.Y. Jan. 24, 2011) ("Because [plaintiff] was a pre-trial
detainee, rather than a convicted inmate, his constitutional claim arises under the Fifth
Amendment's Due Process Clause rather than the Eighth Amendment's proscription against
'cruel and unusual punishment.'"); Brown v. Lindsay, Nos. 08-CV-351, 08-CV-2182, 2010
WL 1049571 at *15 (E.D.N.Y. Mar. 19, 2010) (Weinstein, D.J.) ("The due process clause
of the Fifth Amendment applies to claims by pre-trial detainees of excessive force and of
deliberate indifference to medical needs.").  Whether Roseboro's claims arise under the Fifth
or Eighth Amendment, the analysis remains the same.  See, e.g., Cuoco v. Moritsugu, 222
F.3d at 106 ("We have often applied the Eighth Amendment deliberate indifference test to
pre-trial detainees bringing actions under the Due Process Clause of the Fourteenth
Amendment.  We see no reason why the analysis should be different under the Due Process
Clause of the Fifth Amendment." (citation omitted)); Weyant v. Okst, 101 F.3d 845, 856 (2d
Cir. 1996) ("The rights of one who has not been convicted are protected by the Due Process
Clause; and while the Supreme Court has not precisely limned the duties of a custodial
official under the Due Process Clause to provide needed medical treatment to a pretrial
detainee, it is plain that an unconvicted detainee's rights are at least as great as those of a
(continued...)

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege:  (1) the conditions were "sufficiently grave" as to constitute a denial of the "'minimal civilized measure of life's necessities,'" and (2) the prison officials acted with "'deliberate indifference.'"  See, e.g., Wilson v. Seiter, 501 U.S. at 297-98, 111 S. Ct. at 2323-24 (1991); accord, e.g., Salahuddin v. Goord, 467 F.3d 263, 279-80 (2d Cir. 2006); Branham v. Meachum, 77 F.3d 626, 630-31 (2d Cir. 1996).

Roseboro was sent to the SHU and sanctioned with a ninety-day loss of his visitation, phone and commissary privileges for failing to stand for the June 1, 2009 inmate count.  (See pages 9-10 above.)  While as a result of this punishment Roseboro "couldn't speak to [his] wife . . . see any family members . . . [or] go to the store" (Dkt. No. 52: Phillips Aff. Ex. T: Roseboro Dep. at 101), these penalties are not severe enough to constitute cruel and unusual punishment.  See, e.g., Randolph v. Simmons, No. 08-CV-6245, --- F. Supp. 2d ----, 2010 WL 4823670 at *1, *3 (W.D.N.Y. Nov. 29, 2010) ("Plaintiff also contends that the penalty imposed by [defendant - i.e., three months in the SHU, loss of privileges and good time] was excessive, in violation of plaintiff's rights under the Eighth Amendment.  This claim is meritless on its face.  There is no showing that the sentence imposed was unlawful or atypical. Plaintiff does not allege that his conditions of confinement were unusually harsh . . . ."); Pilgrim v. Artus, No. 07-CV-1001, 2010 WL 3724883 at *9 (N.D.N.Y. Mar. 18, 2010) (finding plaintiff's prison conditions, which included "three thirty

_____

(...continued)
    convicted prisoner."); Brown v. Lindsay, 2010 WL 1049571 at *15 ("The standard under the due process clause of the Fifth Amendment is at least equal to that of the Eighth Amendment for convicted prisoners.").

(30) day and one forty-five (45) day periods in keeplock, loss of phone and commissary privileges, no regular visits, twenty-three (23) hour confinement, and only three showers a week" did not constitute cruel and unusual punishment), report & rec. adopted, 2010 WL 3724881 (N.D.N.Y. Sept. 17, 2010); Parker v. Peek-Co, No. 06-cv-1268, 2009 WL 211371 at *4 (N.D.N.Y. Jan. 27, 2009) ("It is well established . . . that placement in keeplock confinement under the conditions normally associated with that status does not violate an inmate's Eighth Amendment rights."); Phillips v. Girdich, No. 03-CV-1019, 2007 WL 3046744 at *6 (N.D.N.Y. Oct.17, 2007) ("Here, [plaintiff's] three-year loss of contact visits and six separate incidents of not being able to see his family did not dramatically depart from accepted standards for conditions of confinement, create inhumane prison conditions, or otherwise give rise to any conditions or events that would violate the Eighth Amendment's proscription of cruel and unusual punishments." (quotations omitted)).

Roseboro further alleges that he was subject to cruel and unusual punishment when he shared a cell with "cold-blooded murderers" in the SHU and when he was sent to a low security prison instead of a camp.  (See page 12 above.)  As Roseboro has not provided any evidence that defendants were involved in his cell placement or prison transfer, his claims fail for lack of personal involvement.  See, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); see also cases cited on page 42 above.  Moreover, to state a cognizable claim for failure to protect under the Eighth Amendment, a prisoner must show that he was "incarcerated under conditions posing a

substantial risk of serious harm" and that prison official acted with "'deliberate indifference'" to the inmate's safety.  E.g., Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).[34/]

Roseboro baldy asserts that it was cruel and unusual punishment to place him in a cell with "cold-blooded murderers" (see page 12 above), but does not allege that he was threatened, attacked, injured or suffered any mental or physical pain by sharing his cell with these individuals. Without any evidence of injury, Roseboro's failure to protect claim fails.  See, e.g., Encarnacion v. Dann, 80 F. App'x 140, 141 (2d Cir. 2003) (affirming summary judgment for defendants on plaintiff's Eighth Amendment failure to protect claim where plaintiff "suffered no actual injury from the defendants' alleged failure to provide him protection from" another inmate.); Brodak v. Nichols, No. 97-1688, 162 F.3d 1161 (table), 1998 WL 553032 at *2 (6th Cir. Aug. 17, 1998) ("[T]he placement of pretrial detainees in a county jail facility with convicted inmates does not violate the Eighth Amendment, without evidence demonstrating that a pretrial detainee was injured by the cell placement."); Dawes v. Walker, 239 F.3d 489, 494 (2d Cir. 2001) (affirming dismissal of a failure to protect claim where plaintiff did not allege he was assaulted by other inmates), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S. Ct. 992 (2002); Dolberry v. Levine, 567 F. Supp. 2d 413, 418 (W.D.N.Y. 2008) (granting defendants summary judgment on plaintiff's failure to protect claim where there was no evidence that plaintiff "was subjected to any physical harm, or even a genuine risk of physical harm, as a result of defendants' actions"); Cruz v. Hillman, 01 Civ. 4169, 2002 WL 31045864 at * 8 (S.D.N.Y. May 16, 2002) (dismissing plaintiff's failure to

---

[34/]     Accord, e.g., Liggins v. Griffo, 356 F. App'x 537, 539 (2d Cir. 2009); Hines v. Lacy, No. 98-2961, 189 F.3d 460 (table), 1999 WL 642915 at *3 (2d Cir. Aug. 20, 1999); Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 620 (2d Cir.1996).

protect claim because he never "alleged that he was attacked or injured" and "fear of assault does not constitute a 'sufficiently serious' injury sufficient to state a claim under the Eighth Amendment.").

Finally, Roseboro's prison transfer claim also fails because he has not presented any evidence that the conditions at the low-security prison were serious enough to deny him the "'minimal civilized measure of life's necessities'" or that the prison officials acted with "'deliberate indifference,'" or that these defendants were personally involved in his transfer. (See cases cited on page 48 above.)

Accordingly, defendants are granted summary judgment dismissing Roseboro's cruel and unusual punishment claims.

## CONCLUSION[35/]

For the reasons stated above, defendants' summary judgment motion (Dkt. No. 46) is GRANTED.

SO ORDERED.

DATED:    New York, New York
              May 24, 2011

_____
**Andrew J. Peck**
United States Magistrate Judge

Copies to:    Michael A. Roseboro
                  Cristine Irvin Phillips, Esq.

---

[35/]    If the pro se plaintiff requires copies of any of the cases reported only in Westlaw, plaintiff should request copies from opposing counsel. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.1(c)